**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**GRIFFIN INDUSTRIES, INC.,**

                                    **Plaintiff,**

        **v.**                                              **1:05-cv-0684-WSD**

**CAROL COUCH, et al.,**

                                    **Defendants.**

---

## ORDER

This is a Section 1983 action in which Plaintiff Griffin Industries, Inc.

("Plaintiff") alleges certain Georgia state and city government officials conspired to

unlawfully deprive Plaintiff of its constitutional rights.  It is before the Court on

Defendants City of East Dublin, George Gornto and Joshua E. Knight's Motion to

Transfer [7], Defendants City of East Dublin, George Gornto and Joshua E.

Knight's Motion to Dismiss [8], Defendant Laurens County's Motion for Judgment

on the Pleadings [10], Defendant Carol Couch, Tommy Irvin, Lee Myers, Harold

Reheis and DuBose Porter's Motion to Dismiss [24], and Defendant Carol Couch,

Tommy Irvin, Lee Myers, Harold Reheis and DuBose Porter's Motion to Transfer

[48].

## I.   BACKGROUND

Plaintiff owns and operates a rendering facility located in Laurens County, Georgia, adjacent to the city of East Dublin, Georgia (the "Dublin Facility"). Plaintiff alleges that certain Georgia state and city government officials conspired to harm Plaintiff's business and shut down the Dublin Facility.  It further alleges that these officials acted unlawfully in furtherance of this alleged conspiracy, including by engaging in disparate and arbitrary environmental and administrative regulation and permitting practices with respect to Plaintiff.

Plaintiff filed this action on March 11, 2005, asserting claims under Section 1983 for violation of its rights of equal protection and procedural due process. Plaintiff named the following individuals or entities as defendants:  (1) Carol Couch, the Director of the Georgia Environmental Protection Division of the Georgia Department of Natural Resources ("EPD"); Tommy Irvin, the Commissioner of the Georgia Department of Agriculture ("GDA"); Lee Myers, the Assistant Commissioner of GDA; Harold Reheis, the former EPD director; and Dubose Porter, a member of the Georgia General Assembly and co-owner and editor of the Courier-Herald, a newspaper circulated in Dublin, Georgia (collectively, the "State

Defendants"); (2) the City of East Dublin, Georgia; George Gornto, the mayor of East Dublin; and Joshua E. Kight, special counsel for East Dublin and Laurens County (collectively, "the East Dublin Defendants"); and (3) Laurens County, Georgia ("Laurens County").

## II.    DISCUSSION

### A.    Defendants' Motions to Transfer

The East Dublin Defendants and the State Defendants move the Court to transfer this case to the Southern District of Georgia.  Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a); see generally Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (holding that the purpose of Section 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense") (citations omitted). Section 1404(a) "requires the court to consider three factors:  (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interest of justice." Moore v. McKibbon Bros., Inc., 41 F. Supp. 2d 1350, 1356 (N.D. Ga. 1998).  The moving party bears the burden of establishing that the balance of Section 1404(a)

interests favors the transfer.  "[F]ederal courts traditionally have accorded a plaintiff's choice of forum considerable deference," _In re_ Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989), and "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947).  The decision to transfer a case under Section 1404(a) rests within the Court's sound discretion.  See Ross v. Buckeye Cellulose Corp., 980 F.2d 648, 654-55 (11th Cir. 1993) (reviewing district court's transfer of venue for "clear abuse of discretion") (citations omitted).

1.     The East Dublin Defendants' Motion to Transfer

The East Dublin Defendants argue that transfer to the Southern District of Georgia is warranted because (1) the majority of likely witnesses are located in the Southern District; and (2) a visit to the Dublin Facility may be required during the course of a jury trial in this matter.  (East Dublin Defs.' Mem. of Law in Supp. of Mot. to Transfer at 4-5.)  Having reviewed the record and the submissions of the parties on this issue, the Court finds the East Dublin Defendants' arguments are not sufficient to establish that the balance of Section 1404(a) interests favors transfer.

First, the East Dublin Defendants fail to provide adequate support for their claim that the majority of likely witnesses are located in the Southern District of

Georgia.  Exhibit A of the East Dublin Defendants' motion is a list of parties and witnesses who are alleged to reside in the Southern District.  (Id. at Ex. A.)  Neither the list nor their arguments based on it are supported by affidavit or declaration testimony.  In addition, the East Dublin Defendants failed to provide address information for these witnesses or a summary of their expected testimony.  This summary is necessary for the Court to evaluate whether and to what extent the testimony is relevant to the claims at issue in this case.  On the record before the Court, this evaluation is not possible.  The East Dublin Defendants also fail to identify the alleged Southern District witnesses with specificity, electing instead to designate general categories of potential witnesses such as "[m]ultiple neighboring citizens" and "[m]ultiple unknown employees of [the Dublin] facility."  (See id.) Defendants' asserted justification for transferring this case to the Southern District of Georgia is inadequate to overcome the deference accorded to Plaintiff's choice of this District as its litigating forum.[1]

_____

[1]  Apparently recognizing the deficiency of their factual showing in the initial motion to transfer, the East Dublin Defendants attached to their reply brief the Declaration of Theodore Freeman.  (See East Dublin Defs.' Reply in Supp. of Mot. to Transfer [41], Ex. A.)  Submitting supplemental affidavits or declarations on reply generally is improper, since it denies the opposing party an opportunity to address these materials in its response.  See United States v. Ga. Dep't of Natural Res., 897 F. Supp. 1464, 1471 (N.D. Ga. 1995) ("This court will not consider

Second, the Court is not persuaded that a jury viewing of the Dublin Facility is required in this case.  The crux and litigation focal point of Plaintiff's case is an alleged conspiracy to violate its constitutional rights.  Although the alleged regulatory actions taken by Defendants concerned odor emissions from the Dublin Facility, the claims in this case turn on whether Plaintiff was treated differently than other similarly situated corporate entities and whether Plaintiff was afforded adequate procedural due process in the course of its dealings with the State Defendants.  A first-person viewing of the Dublin Facility is not likely to aid the jury in its analysis of these claims.[2]  Further, the possibility of a jury viewing, to the extent it weighs in favor of transfer to the Southern District, is just one of the factors examined by the Court under the "interests of justice" element.  See Moore

arguments raised for the first time in a reply brief.").  Because the East Dublin Defendants have not offered a sufficient reason for failing to include these materials with their initial motion, the Court has not considered the Freeman Declaration in deciding their motion.  Even if it had, the list of witnesses identified in the declaration does not persuade the Court that transfer is appropriate in this case, in view of the uncertainty regarding the quality and scope of the testimony they might offer and what role, if any, these witnesses will have in the litigation.

[2]  The Dublin Facility is located approximately 137 miles from this Court.  Thus, should a jury viewing of the Dublin Facility become necessary, a viewing staged from this Court, although less convenient than a viewing staged from the Dublin Division of the Southern District, is not impossible or unduly burdensome.

v. McKibbon Bros., Inc., 41 F. Supp. 2d 1350, 1356-57 (N.D. Ga. 1998) (holding that when considering the "interest of justice" element under Section 1404(a), the Court looks at the same factors that have been traditionally used in applying the doctrine of forum non conveniens, including (i) the relative ease of access to sources of proof; (ii) the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (iii) the possibility of view of premises, if view would be appropriate to the action; and (iv) all other practical problems that make trial of a case easy, expeditious and inexpensive) (citations omitted).  The East Dublin Defendants fail to argue that these other factors support transfer here.

Because the East Dublin Defendants fail to demonstrate that the balance of factors under Section 1404(a) strongly favor transfer and therefore warrant disturbing Plaintiff's choice of forum, their motion to transfer this case to the Southern District of Georgia is DENIED.

2.    The State Defendants' Motion to Transfer

The State Defendants' motion, which simply adopts the arguments made by the East Dublin Defendants, is untimely.  Absent permission of the Court, or an independent deadline set out in the Local Rules, all motions must be filed within

thirty (30) days after the preliminary planning report is filed or should have been filed.  Here, the parties filed their Joint Preliminary Report and Discovery Plan [34] on May 3, 2005.  The State Defendants filed their motion to transfer on July 8, 2005, more than thirty days after the Joint Preliminary Report was filed, and they did not obtain permission of the Court prior to filing.  The Court notes further that although the parties noted the East Dublin Defendants' motion to transfer in the Joint Preliminary Report, the State Defendants did not forecast to the Court that they intended to file a motion to transfer and that they may need additional time to do so.  (See Joint Preliminary Report at 6.)

Because the East Dublin and State Defendants have not made a sufficient showing that this matter should be transferred, and because the State Defendants' motion otherwise is untimely, the motion is DENIED.

### B.      Defendants' Motions to Dismiss

The State Defendants and the East Dublin Defendants move to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.  The law in this Circuit governing motions to dismiss pursuant to Rule 12(b)(6) is well settled.  Dismissal of a complaint is appropriate only when, on the basis of a dispositive

issue of law, no construction of the factual allegations will support the cause of

action.  Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d

1171, 1174 (11th Cir. 1993).  "Although a plaintiff is not held to a very high

standard in a motion to dismiss for failure to state a claim, some minimal pleading

standard does exist."  Wagner v. Daewoo Heavy Indus. Am. Corp., 289 F.3d

1268, 1270 (11th Cir. 2002), vacated on other grounds, 314 F.3d 541 (11th Cir.

2002) (en banc).  "To survive a motion to dismiss, plaintiffs must do more than

merely state legal conclusions; they are required to allege some specific factual

bases for those conclusions or face dismissal of their claims."  Jackson v.

BellSouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004) ("[C]onclusory

allegations, unwarranted deductions of facts or legal conclusions masquerading as

facts will not prevent dismissal.") (citations omitted).  The factual allegations set out

in the Complaint are accepted as true for the purposes of Defendants' motions to

dismiss.  See Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182

(11th Cir. 2002).

### 1.    The State Defendants' Motion to Dismiss

The State Defendants argue Plaintiff's claims against them should be

dismissed because (1) claims against the State Defendants in their official capacities fail because the State is not a "person" under Section 1983; (2) much of the alleged conduct falls outside the two-year statute of limitations for Section 1983 claims; (3) Plaintiff's allegations with respect to conduct occurring within two years of the Complaint are not sufficient to state a claim for violation of its constitutional rights of equal protection or procedural due process; (4) the State Defendants are entitled to qualified immunity with respect to Plaintiff's claims for damages against them; and (5) the Court should abstain from deciding Plaintiff's claims for injunctive relief. (State Defs.' Br. in Supp. of Mot. to Dismiss at 2-25.) The Court shall address these arguments in turn.

a.   *Plaintiff's Claims for Damages Against the State Defendants in Their Official Capacities*

Plaintiff asserts claims for damages against Defendants Couch, Irvin and Myers in their official capacities. (Compl. ¶¶ 2, 3, 4.) The State Defendants move to dismiss these claims on the ground that claims against state officials in their official capacities are, in fact, claims against the state, and the state is not a "person" subject to suit under Section 1983. (State Defs.' Br. in Supp. of Mot. to Dismiss at 2) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons'

-10-

under § 1983.").  The State Defendants also assert that such claims are barred by

Eleventh Amendment immunity.  (Id. at 3) (citing Schopler v. Bliss, 903 F.2d 1373,

1378 (11th Cir. 1990) ("[T]he Eleventh Amendment extends to state agencies and

other arms of the state, but it does not reach lawsuits against municipalities and

other discreet political subdivisions that are sufficiently independent from the

state."). Cf. ABATE of Ga., Inc. v. Georgia, 137 F. Supp. 2d 1349, 1358 (N.D.

Ga. 2001) (concluding that "damages may not be recovered from the State, its

agencies, or its officials acting in their official capacity because the State of Georgia

has not waived its Eleventh Amendment immunity and Congress has not validly

overridden it.").  Plaintiff does not refute that its claims for damages against

Defendants Couch, Irvin and Myers in their official capacities should be dismissed

on these grounds.  (See Pl.'s Resp. to State Defs.' Mot. to Dismiss [32].)

Accordingly, the State Defendants' motion to dismiss these claims is GRANTED.

          b.    *Statute of Limitations*

Section 1983 claims in Georgia are governed by a two-year statute of

limitations.  See Rozar v. Mullis, 85 F.3d 556, 560-61 (11th Cir. 1996) (stating that

"precedent is clear that [Section 1983 claims] are measured by the personal injury

limitations period of the state" and that Georgia law provides a two-year statute of

limitations for personal injury claims) (citing O.C.G.A. § 9-3-33)).  The Complaint in this case was filed on March 11, 2005.  The State Defendants move to dismiss Plaintiff's claims to the extent they are based on alleged conduct which occurred more than two years prior to the filing of the Complaint, i.e., before March 11, 2003.  (State Defs.' Br. in Supp. of Mot. to Dismiss at 3-4.)[3]  Plaintiff concedes that its claims are governed by a two-year statute of limitations, but argues that its claims based on pre-March 11, 2003 conduct are not barred because (1) the statute of limitations is tolled under Georgia's continuing tort doctrine; and (2) under the

_____

[3]  The pre-March 11, 2003 conduct alleged in the Complaint includes various Defendants' urging East Dublin residents to complain to GDA regarding odors from the Dublin Facility (Compl. ¶¶ 29, 69-70), Defendant Porter's demand that Plaintiff participate in an "odor study," (id. at ¶ 33), EPD's issuing a "first draft" of the Title V permit for the Dublin Facility (id. at ¶ 42), GDA's pressuring Plaintiff to enter into a voluntary agreement to minimize malodors at the Dublin Facility (id. at ¶¶ 49-52), various Defendants' demands that the Title V permit for the Dublin Facility include odor control requirements (id. at ¶ 57), Defendant Porter's publication of negative editorials regarding the Dublin Facility in 2002 (id. at ¶ 67), East Dublin police's patrolling of the Dublin Facility (id. at ¶ 71), Defendants Gornto and Knight directing third parties to trespass on Plaintiff's property (id. at ¶ 75), Defendant Knight's solicitation of an affidavit containing alleged false statements (id. at ¶ 76), the United States Environmental Protection Agency's search of the Dublin Facility (id. at ¶ 77), and Defendant Knight's publication of a report accusing Plaintiff of numerous environmental crimes (id. at ¶ 80).

"discovery rule," Plaintiff's claims did not accrue until within two years of its

Complaint.  (See Pl.'s Resp. to State Defs.' Mot. to Dismiss at 10-12.)[4]

The continuing tort doctrine tolls the statute of limitations where the injury

resulting from a tortious act is not immediately apparent and the victim could not in

the exercise of ordinary care have learned of it.  See Forgay v. Tucker, 197 S.E.2d

492, 501 (Ga. Ct. App. 1973) ("Analysis of ["continuing tort doctrine"] cases in

the light of their respective and differing factual situations authorizes the conclusion

that when the injury resulting from a tortious act is not immediately apparent the

statute of limitation is tolled so long as the victim could not in the exercise of

ordinary care have learned of it . . . ."); Everhart v. Rich's, Inc., 194 S.E.2d 425,

---

[4] In Section 1983 cases, "the length of the limitations period, and the closely
related questions of tolling and application, are to be governed by state law."
Wilson v. Garcia, 471 U.S. 261, 276-77 (1985).  Determining when a Section 1983
claim accrues, however, is governed by federal law.  Mullinax v. McElhenney, 817
F.2d 711, 716 (11th Cir. 1987) ("[W]hen a Section 1983 action accrues is a
question of federal law.").  Plaintiff characterizes the "discovery rule" as a tolling
mechanism under Georgia law.  (Pl.'s Resp. to State Defs.' Mot. to Dismiss at 10.)
It is clear to the Court from Plaintiff's citations and its discussion of the "discovery
rule," however, that Plaintiff actually is referring to the issue of when its Section
1983 claims accrued under federal law.  (See id. at 11-12) (citing Mullinax, 817
F.2d at 717).  Cf. Ashcroft v. Randel, 391 F. Supp. 2d 1214, 1219 (N.D. Ga. 2005)
("Under the federal 'discovery rule,' a claim accrues when the injured party knew
or should have known both (1) that he has suffered the injury that forms the basis
of his complaint and (2) who inflicted that injury.") (citations omitted).  The Court
will construe Plaintiff's argument accordingly.

428 (Ga. 1972) (holding that a breach of a duty to another constitutes "a tort of a continuing nature which tolls the statute of limitation so long as the continued exposure to the hazard is occasioned by the continued failure of the tortfeasor to warn the victim, and the statute of limitation does not commence to run under these circumstances until such time as the continued tortious act producing injury is eliminated, e.g., by an appropriate warning in respect to the hazard.").[5] Georgia courts have applied the continuing tort doctrine in a limited set of factual circumstances, including where a physician fails to remove a foreign object placed

_____

[5] The cases applying the continuing tort doctrine are not entirely consistent regarding whether this doctrine is a tolling mechanism or a rule governing the date of accrual of certain tort actions.  Compare Forgay, 197 S.E.2d at 501, with Waters v. Rosenbloom, 490 S.E.2d 73, 75 (Ga. 1997) ("Georgia courts have consistently held that in a continuing tort a cause of action accrues when a plaintiff discovers, or with reasonable diligence should have discovered, both the injury and the cause thereof.") (emphasis added), and Tucker v. S. Wood Piedmont Co., 28 F.3d 1089, 1091 (11th Cir. 1994) ("Under Georgia law, a cause of action for a tort that is continuing in nature -- for example, the frequent runoff of contaminated water across land, or . . . the underground leakage of hazardous waste onto adjoining property -- accrues at the time of continuance.") (emphasis added).  This distinction is critical here, where the tolling of the two-year statute of limitations for Plaintiff's Section 1983 claims is governed by state law, but the date of the accrual of those claims is governed by federal law.  If the continuing tort doctrine is a rule governing the accrual of certain tort actions in Georgia, it is irrelevant to the statute-of-limitations issue in this case.  Because neither party addresses this issue, the Court assumes without deciding that the continuing tort doctrine is a tolling mechanism which may be properly applied to a Section 1983 claim.

-14-

in his patient's body during treatment.  See Dalbey v. Banks, 264 S.E.2d 4, 5 (Ga. 1980) ("[A physician's] failure to remove [the foreign object] goes beyond ordinary negligence so as to be classified by the legislature as a continuing tort which tolls the statute of limitations until the object is discovered."); Parker v. Vaughan, 183 S.E.2d 605, 606-07 (Ga. Ct. App. 1971).

Plaintiff argues the continuing tort doctrine applies here because "[D]efendants conspired to take, and have taken, repeated and continuing steps to deprive [Plaintiff] of its past and present constitutional rights."  (Pl.'s Resp. to State Defs.' Mot. to Dismiss at 11.)  This argument is without merit.  The factual circumstances alleged in this case bear no resemblance to those in which Georgia courts have applied the continuing tort doctrine.  The alleged conduct of which Plaintiff complains and alleged injury resulting from them were known to Plaintiff at or near the time they occurred.  Indeed, the acts complained of were largely public and often made known to Plaintiff immediately.  (See Compl. ¶¶ 24-80.) Their alleged effects also were public and, to the extent they were not, it would have taken little effort for Plaintiff to discover the effect of the conduct alleged.   This is not a case where, like the foreign object negligently left in the patient's body during treatment, the injury resulting from a tortious act is not immediately apparent and

-15-

the victim could not in the exercise of ordinary care have learned of it. Accordingly, the Court finds that the continuing tort doctrine does not apply here.

Plaintiff's arguments regarding the date of accrual of its claims based on pre-March 11, 2003 conduct also are without merit. "In Section 1983 cases, the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Mullinax, 817 F.2d at 716 (citing Calhoun v. Ala. Alcoholic Beverage Control Bd., 705 F.2d 422, 425 (11th Cir. 1983) (internal punctuation and quotations omitted); see also Rozar, 83 F.3d at 562 ("Under section 1983, a claim accrues when the plaintiff knows or has reason to know that he was injured, and he is or should be aware who injured him."); Ashcroft, 391 F. Supp. 2d at 1219 ("In assessing whether [a Section 1983 plaintiff] should have known of his claim, the Court must determine whether facts sufficient to support a cause of action were or should have been apparent to a person with a reasonably prudent regard for his rights.") (citations omitted).

Plaintiff does not dispute that, with respect to pre-March 11, 2003 conduct, it knew or had reason to know that it was injured at the time the alleged conduct occurred. (Pl.'s Resp. to State Defs.' Mot. to Dismiss at 11-12.) See generally

Rozar, 85 F.3d at 563 (holding that Section 1983 claims against county officials accrued at the time of the alleged racially motivated county action).  Nor does Plaintiff dispute that, with respect to the named defendants, it knew or had reason to know who injured it prior to March 11, 2003.  (See Pl.'s Resp. to State Defs.' Mot. to Dismiss at 11-12.)  Instead, Plaintiff argues that its Section 1983 claims have not yet accrued because it "is still not aware . . . of all defendants involved in the conspiracy to deprive [it] of its constitutional rights, and is not fully aware of the interaction between defendants to deprive [Plaintiff] of its rights."  (Pl.'s Resp. to State Defs.' Mot. to Dismiss at 12) (citing Mullinax, 817 F.2d at 717).

Taken at face value, Plaintiff's argument appears to be that a Section 1983 claim does not accrue until the plaintiff, through informal investigation or otherwise, is fully aware of all possible defendants or the full extent of their interactions.  This simply is not the law.  See Rozar, 83 F.3d at 562; Ashcroft, 391 F. Supp. 2d at 1219.  In fact, the lone case cited by Plaintiff undermines, rather than supports, his theory.  In Mullinax v. McElhenney, the Eleventh Circuit evaluated whether the two-year statute of limitations barred a Section 1983 plaintiff's claim against two attorneys alleged to have participated in her entrapment.  817 F.2d at 716-17.  Although the attorneys' conduct with respect to the entrapment occurred more than

two years before the plaintiff's complaint was filed, the court concluded that her claims were not barred because she did not discover that the attorneys were involved in the entrapment until after she was arrested, less than two years prior to the filing of her complaint.  Id.

The court's holding in Mullinax does not support Plaintiff's argument that a Section 1983 claim does not begin to accrue until all possible defendants are discovered.  Instead, it demonstrates that a court must examine the allegations with respect to each of the defendants to determine when the facts giving rise to the Section 1983 claim against a particular defendant were or should have been apparent to a person with a reasonably prudent regard for his rights.  See Mullinax, 817 F.2d at 716-17.  An examination of Plaintiff's allegations in this case demonstrates that the facts giving rise to its cause of action with respect to Defendants' pre-March 11, 2003 conduct -- including the alleged conduct itself and the various Defendants' alleged participation in that conduct -- were or should have been apparent to a person with a reasonably prudent regard for his rights prior to March 11, 2003.  Accordingly, these claims accrued before March 11, 2003, and are barred by the two-year statute of limitations.

For these reasons, the State Defendants' motion to dismiss Plaintiff's Section 1983 claims based on conduct which occurred prior to March 11, 2003, is GRANTED.  Plaintiff's claims with respect to the State Defendants are limited to conduct occurring after March 11, 2003, including the temporary suspension of its Land Application System ("LAS") permit for the Dublin Facility on March 14, 2003, and the Title V permit proceedings beginning in the Spring of 2003.[6]

        c.     *Plaintiff's Section 1983 Claims for Alleged Violation of Its Rights to Equal Protection and Procedural Due Process*

Section 1983 does not itself confer any substantive rights.  <u>See</u> 42 U.S.C. § 1983; <u>Graham v. Connor</u>, 490 U.S. 386, 393- 94 (1989).  Instead, it provides a private cause of action for persons whose rights under the United States Constitution have been violated under color of state law -- "a method of vindicating federal rights elsewhere conferred."  <u>See Graham</u>, 490 U.S. at 393-94.  To establish a Section 1983 violation, a plaintiff must show:  (1) conduct committed by a person acting under color of state law; (2) that deprived them of rights, privileges or immunities secured by the Constitution or laws of the United States.  <u>See Duke v.</u>

---

[6] The Court expresses no opinion on whether any of the alleged pre-March 11, 2003 events have evidentiary value or would be admissible in a proceeding based on post-March 11, 2003 conduct.

Massey, 87 F.3d 1226, 1231 (11th Cir. 1996).  Here, Plaintiff alleges the State

Defendants violated its rights to equal protection and procedural due process under

the Fourteenth Amendment.[7]  The State Defendants move to dismiss these claims

for failure to state a claim upon which relief can be granted, arguing that Plaintiff

fails to allege conduct on the part of the State Defendants which constitutes a

violation of its constitutional rights.  (State Defs.' Br. in Supp. of Mot. to Dismiss

at 4-9.)

i.       Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that

no State shall 'deny to any person within its jurisdiction the equal protection of the

laws,' which is essentially a direction that all persons similarly situated should be

treated alike."  City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439

(1985) (citation omitted).  "[T]o properly plead an equal protection claim, a plaintiff

need only allege that through state action, similarly situated persons have been

treated disparately."  Thigpen v. Bibb County, Ga., Sheriff's Dep't, 223 F.3d 1231,

1237 (11th Cir. 2000), abrogation on other grounds recognized by Watson v. Blue

_____

[7] Plaintiff does not assert a substantive due process claim.  (Pl.'s Resp. to
State Defs.' Mot. to Dismiss at 2 n.1).

-20-

Circle, Inc., 324 F.3d 1252, 1258 (11th Cir. 2003).  It is not necessary for a plaintiff asserting an equal protection claim to allege that it is a member of a protected class. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  Courts recognize equal protection claims brought by a "class of one," where the plaintiff "alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  See id. at 564-65.

Plaintiff alleges that the State Defendants have intentionally discriminated against it by, among other things, "subjecting [it] to undue and improper regulatory requirements, by imposing arbitrary and capricious requirements and sanctions on [its] Dublin Facility, and by intentionally acting to deprive [Plaintiff of its] assets, money, contracts, business, right to conduct business, and to damage [its] reputation and business good will."  (Compl. ¶ 106.)  Plaintiff alleges that it has been "singled out" by the State Defendants and that other similarly situated rendering facilities operating in Georgia, including those owned and operated by its primary competitor American Proteins, have not been subjected to similar treatment despite environmental conditions at their facilities that were equal to or worse than those at the Dublin Facility.  (Id. at ¶¶ 17-20, 63, 91, 107.)

The Court finds that these allegations, which must be accepted as true for the purposes of the motion to dismiss, are, at this stage, sufficient to state an equal protection claim.  See Olech, 528 U.S. at 564-65 (holding that the plaintiff's allegation that the government intentionally demanded a 33-foot easement from her but required only a 15-foot easement from other similarly situated property owners was sufficient to state a claim for relief under traditional equal protection analysis); Executive 100, Inc. v. Martin County, 922 F.2d 1536, 1541 (11th Cir. 1991) (holding that the plaintiff landowners' allegation that the defendant board of county commissioners treated them differently from other similarly situated landowners without any reasonable basis in denying their request for zoning change was sufficient to state an equal protection claim).  Accordingly, the State Defendants' motion to dismiss Plaintiff's equal protection claim is DENIED.

ii.     Procedural Due Process

Plaintiff alleges it was denied procedural due process in connection with the EPD's March 14, 2003 Emergency Order suspending Plaintiff's LAS permit for the Dublin Facility.  It is undisputed that Plaintiff challenged the EPD's Emergency Order and that on April 29, 2003, following an evidentiary hearing, an administrative law judge issued a final decision reversing the Emergency Order and lifting the

suspension on the LAS permit.  (Compl. ¶¶ 88-89.)  According to the allegations in the Complaint, the administrative law judge determined that the EPD had no factual basis for imposing the suspension and that the agency had not imposed similar penalties on Plaintiff's competitors despite the existence of equal or worse environmental conditions at their facilities.  (Id. at ¶¶ 90-91.)  Plaintiff alleges that it incurred over $400,000 in damages in the form of increased operating costs and attorneys' fees and expenses as a result of the Emergency Order.  (Id. at ¶ 92.)

The State Defendants move to dismiss Plaintiff's procedural due process claim for failure to state a claim upon which relief can be granted.  (State Defs.' Br. in Supp. of Mot. to Dismiss at 7-9.)  "In this circuit, a § 1983 claim alleging a denial of procedural due process requires proof of three elements:  (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process."  Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994).  For the purposes of their motion to dismiss, the State Defendants do not dispute that Plaintiff suffered a deprivation of a constitutionally protected property interest as a result of state action.  (State Defs.' Br. in Supp. of Mot. to Dismiss at 8.)  They argue Plaintiff's claim fails because the process provided by

the State with respect to the March 14, 2003 suspension of its LAS permit was

constitutionally adequate.  (Id. at 8-9.)[8]

     The parties' dispute concerning the adequacy of process provided to

Plaintiff with respect to the suspension of the LAS permit focuses on whether

Plaintiff was entitled to a hearing before the March 14, 2003 Emergency Order was

issued.  To determine in a particular case what procedural protections are mandated

by the Constitution's guarantee of due process, courts weigh several factors:

---

[8] The post-March 11, 2003 conduct of which Plaintiff complains is (1) the
March 14, 2003 temporary suspension of its LAS permit; (2) the March 17, 2003
article published in Defendant Porter's newspaper, the Courier-Herald; (3) the
private class-action lawsuit filed against Plaintiff on April 11, 2003; (4) the ongoing
Title V permit proceedings which began in the Spring of 2003; and (5) the October
2003 indictment of certain current and former employees of Plaintiff on the basis of
an affidavit obtained by Defendant Knight.  (Compl. ¶¶ 78, 81-102.)  Of these
alleged actions, it is clear that only the temporary suspension of the LAS permit
qualifies as a deprivation of a constitutionally protected interest as a result of state
action.  The October 2003 indictment was pursued by the United States
Environmental Protection Agency, and Plaintiff does not allege a conspiracy
between any of the defendants and this federal agency.  (Compl. ¶¶ 76-79.)  The
article and lawsuit do not constitute deprivations of constitutionally protected
interests as a result of state action, and it is clear from the record that, at the time of
the filing of the Complaint and motions to dismiss, and Title V permit restrictions
challenged by Plaintiff had not gone into effect and were the subject of ongoing
state administrative proceedings.  See generally Zinermon v. Birch, 494 U.S. 113,
123 (1990) (holding that procedural due process violations do not become
complete "unless and until the state refuses to provide due process").
Accordingly, Plaintiff's procedural due process claim is viable only with respect to
the State Defendants' temporary suspension of its LAS permit.

> First, the private interest that will be affected by the
> official action; second, the risk of an erroneous
> deprivation of such interest through the procedures used,
> and the probable value, if any, of additional or substitute
> procedural safeguards; and finally, the Government's
> interest, including the function involved and the fiscal and
> administrative burdens that the additional or substitute
> procedural requirement would entail.

Zinermon v. Birch, 494 U.S. 113, 127 (1990) (quoting Mathews v. Eldridge, 424

U.S. 319, 335 (1976)).  "Applying this test, the [Supreme Court] usually has held

that the Constitution requires some kind of a hearing before the State deprives a

person of liberty or property."  Zinermon, 4949 U.S. at 127; see also id. at 132 ("In

situations where the State feasibly can provide a predeprivation hearing before

taking property, it generally must do so regardless of the adequacy of a

postdeprivation tort remedy to compensate for the taking."); McKinney v. Pate, 20

F.3d 1550, 1561 (11th Cir. 1994) ("It is axiomatic that, in general, the Constitution

requires that the state provide fair procedures and an impartial decisionmaker

before infringing on a person's interest in life, liberty, or property.").

        "In some circumstances, however, a statutory provision for a

postdeprivation hearing, or a common-law tort remedy for erroneous deprivation,

satisfies due process."  Zinermon, 494 U.S. at 127.  Courts have indicated that

such post-deprivation remedies are sufficient where pre-deprivation process is not

feasible or where exigent circumstances justify an alleged deprivation without process.  See Carcamo v. Miami-Dade County, 375 F.3d 1104, 1106 n.4 (11th Cir. 2004) ("[T]he acceptability of post-deprivation process turns on the feasibility of pre-deprivation process . . ."); McKinney, 20 F.3d at 1562-63 ("[D]ue process [does] not require pre-deprivation hearings where the holding of such a hearing would be impracticable, that is, where the deprivation is the result of either a negligent or an intentional deprivation of property."); Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 19 (1978) (stating that a pre-deprivation hearing may not be required "where the potential length or severity of the deprivation does not indicate a likelihood of serious loss and where the procedures . . . are sufficiently reliable to minimize the risk of erroneous determination"); Grayden v. Rhodes, 345 F.3d 1225, 1236-37 (11th Cir. 2003) ("We conclude . . . that the emergency evacuation of tenants from a dangerous and potentially life-threatening structure qualifies as an 'extraordinary situation' [in which] tenants can be evicted from a building reasonably judged to be unfit for human occupancy without a pre-deprivation hearing.").  As the Supreme Court explained in Zinermon, the cases in which post-deprivation remedies are found to satisfy due process are not an exception to the Matthews v. Eldridge analysis; instead, they represent a special

-26-

subset of the analysis in which post-deprivation remedies "are all the process that is due, simply because they are the only remedies the State could be expected to provide."  494 U.S. at 128.

The State Defendants argue that the post-deprivation hearing provided by the State here was sufficient because of the emergency nature of the EPD's March 14, 2003 order suspending Plaintiff's LAS permit.  (State Defs.' Br. in Supp. of Mot. to Dismiss at 8-9; State Defs.' Reply in Supp. of Mot. to Dismiss [42] at 6-11.)  They fail, however, to address the factors articulated in Matthews v. Eldridge, and the Court is without sufficient information at this stage of the litigation to conduct this analysis *sua sponte*.  For example, with respect to the adequacy of procedural safeguards in place regarding emergency suspension of the LAS permit, the State Defendants argue only that EPD "has authority under the Georgia Water Quality Control Act . . . to take emergency action '[w]henever the division finds that an emergency exists requiring that such action be taken as it deems necessary to meet the emergency."  (State Defs.' Reply in Supp. of Mot. to Dismiss at 7.) They do not elaborate on what criteria, if any, the agency decisionmaker is required to rely in determining that environmental conditions at a particular facility are unsafe to the general public, nor do they cite the Court to any objective standards

-27-

established by the agency for determining what circumstances warrant intervention on an "emergency" basis -- i.e., suspending the particular facility's permit without a prior hearing.  They do not cite the specific facts which they allege suggest an emergency existed with respect to the Dublin Facility.  Without this information, the Court cannot determine whether Georgia put into place adequate procedural safeguards to minimize the chance that an erroneous emergency suspension of a permit would occur, and therefore is unable to evaluate whether the post-deprivation remedies provided here were sufficient to satisfy due process.[9]

---

[9] Plaintiff argues that the alleged intentional conduct on the part of EPD officials in this case precludes any argument that a pre-deprivation hearing was impracticable.  (Pl.'s Resp. to State Defs.' Mot. to Dismiss at 15-16.)  In essence, it contends that because the State Defendants allegedly conspired to deprive Plaintiff of its LAS permit, such deprivation was foreseeable and therefore a pre-deprivation hearing could have been provided.  (See id.)  This argument is without merit.  In Hudson v. Palmer, 468 U.S. 517 (1984), the Supreme Court held that unauthorized, intentional conduct on the part of a state actor to deprive a person of liberty or property without a prior hearing does not necessarily give rise to a procedural due process violation.  Hudson involved a prisoner who alleged that, during a search of his prison cell, a guard deliberately and maliciously destroyed some of his property as part of a "personal vendetta" against the prisoner.  Id. at 519-20, 522 n.2.  The Court held that the fact that the guard's conduct was intentional and therefore foreseeable to him was "of no consequence" in evaluating whether pre-deprivation process was feasible, since the relevant inquiry is "whether the state is in a position to provide for predeprivation process."  Id. at 534; see also Zinermon, 494 U.S. at 129-30 (discussing Hudson).  This same principle applies here, where Plaintiff alleges that EPD officials acted pursuant to a long-standing conspiracy to violate its constitutional rights.  The proper inquiry is not whether the

Compare Powell v. Ga. Dep't of Human Res., 114 F.3d 1074, 1081-83 (11th Cir.

1997) (holding that post-deprivation remedies for deprivation imposed by state

social workers were sufficient to satisfy due process where a pre-deprivation

hearing before every caseworker decision was not feasible and the State had

provided an extensive set of protocols for caseworkers to follow in deciding

whether to impose such a deprivation).

The State Defendants also argue that Plaintiff was provided with an adequate

state-law remedy in the form of a tort claim for damages resulting from the alleged

deprivation.  (State Defs.' Reply in Supp. of Mot. to Dismiss at 9.) See generally

Cotton v. Jackson, 216 F.3d 1328, 1331 (11th Cir. 2000) ("If adequate state

remedies were available but the plaintiff failed to take advantage of them, the

plaintiff cannot rely on that failure to claim that the state deprived him of procedural

due process."); Collins v. Walden, 613 F. Supp. 1306, 1313-14 (N.D. Ga. 1985)

("The state remedy need not be identical to, or as extensive as, a remedy for

_____

State Defendants could have foreseen the deprivation and therefore provided pre-
deprivation process, but whether Georgia could have provided pre-deprivation
process in these circumstances and, if not, whether it put into place adequate
procedural safeguards to minimize the chance of an erroneous (or malicious)
deprivation.

damages under section 1983, but instead need only be sufficient to satisfy the

requirements of procedural due process.") (citing <u>Parratt v. Taylor</u>, 451 U.S. 527,

544 (1981)).  Specifically, the State Defendants argue that Plaintiff could have

asserted a claim for damages against the EPD under the Georgia Tort Claims Act

("GTCA") to recover the $400,000 in damages it claims to have incurred as a result

of the Emergency Order.  (State Defs.' Reply in Supp. of Mot. to Dismiss at 9)

("[T]he state also provided to [Plaintiff] a post-deprivation remedy for damages

under the Georgia Tort Claims Act . . . which [Plaintiff] apparently chose not to

use.").

      The Court is not persuaded by this argument.  First, it was raised for the first

time on reply, thereby precluding Plaintiff from addressing whether a claim under

the GTCA is an adequate remedy for the alleged deprivation.  <u>See</u> <u>Ga. Dep't of</u>

<u>Natural Res.</u>, 897 F. Supp. at 1471.  Second, it is unclear whether the GTCA

provides an action for damages under these circumstances.  Subject to certain

exceptions and limitations, the Act provides a waiver of the State's sovereign

immunity for torts committed by state officers and employees while acting within

the scope of their official duties or employment.  <u>See</u> O.C.G.A. §§ 50-21-20,

50-21-23.  One such exception provides that Georgia shall have no liability "for

losses resulting from . . . [l]icensing powers or functions, including, but not limited

to, the issuance, denial, suspension, or revocation of or the failure or refusal to

issue, deny, suspend, or revoke any permit, license, certificate, approval, order, or

similar authorization." Id. at § 50-21-24(9).  The State Defendants have not

addressed this exception, and it appears to the Court that it may preclude a claim

against EPD for damages resulting from the suspension of Plaintiff's LAS permit.

See Ga. Forestry Comm'n v. Canady, 617 S.E.2d 569, 573 (Ga. Ct. App. 2005)

(holding that licensing exception set out in O.C.G.A. § 50-21-24(9) precluded

liability on the part of a state agency for damages stemming from its decision to

issue a permit for the burning of timber land); Smith v. Dep't of Human Res., 570

S.E.2d 337, 340-41 (Ga. Ct. App. 2002) (holding that the licensing exception

"clearly" exempts the state and its agencies from liability for losses sustained as a

result of the revocation of the plaintiff's approval as a Medicaid provider).[10]

---

[10]  The Court notes, however, that the State Defendants' immunity from suit
under the GTCA does not necessarily render this state remedy inadequate.  See
Rittenhouse v. DeKalb County, 764 F.2d 1451, 1457-59 (11th Cir. 1985) ("We
further conclude that the sovereign immunity enjoyed by [the government
defendants] do not render [the plaintiff's] state law remedy inadequate . . . .");
McCall v. Dep't of Human Res., 176 F. Supp. 2d 1355, 1369 n.6 (M.D. Ga. 2001)
("The Court notes that the adequacy of the GTCA is not affected by the possibility
that [the defendant county officials] may be entitled to state-law immunity.") (citing
Rittenhouse, 764 F.2d at 1457-59).

Because the Court is without sufficient information to evaluate the feasability of pre-deprivation process or the adequacy of the post-deprivation remedies available to Plaintiff, the State Defendants' motion to dismiss Plaintiff's procedural due process claim with respect to the March 14, 2003 suspension of its LAS permit is DENIED.

        d.    *Qualified Immunity*

The State Defendants argue they are entitled to qualified immunity with respect to Plaintiff's claims for damages against them in their individual capacities.[11]  (State Defs.' Br. in Supp. of Mot. to Dismiss at 11-17.)  "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Wood v. Kesler</u>, 323 F.3d 872, 877 (11th Cir. 2003) (citations and quotations omitted).  "Questions of qualified immunity should be resolved at the earliest possible stage in the litigation."  <u>Dalrymple v. Reno</u>, 334 F.3d 991, 995 (11th Cir. 2003).  "A district

---

[11]  It is well settled that qualified immunity does not protect government employees sued in their official capacities or in their individual capacities with respect to claims for injunctive relief.  <u>See</u> <u>Rogers v. Miller</u>, 57 F.3d 986, 989 n.4 (11th Cir. 1995).

court should therefore grant the defense of qualified immunity on a motion to dismiss if the complaint fails to allege the violation of a clearly established constitutional right."  Id. (citations and quotations omitted).

The process for evaluating a defense of qualified immunity is well established:

> To be eligible for qualified immunity, the official must first establish that he was performing a "discretionary function" at the time the alleged violation of federal law occurred.  Once the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity.  In order to demonstrate that the official is not entitled to qualified immunity, the plaintiff must show two things:  (1) that the defendant has committed a constitutional violation and (2) that the constitutional right the defendant violated was "clearly established" at the time he did it.

Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004). Cf. Holloman v. Harland, 370 F.3d 1252, 1278 (11th Cir. 2004) ("[W]e do not just compare the facts of an instant case to prior cases to determine if a right is 'clearly established;' we also assess whether the facts of the instant case fall within statements of general principle from our precedents.").  Here, it is clear the State Defendants were performing discretionary functions at the time the alleged violations of federal law occurred.  See Crosby, 394 F.3d at 1332 ("To determine whether an official was

-33-

engaged in a discretionary function, [the court must] consider whether the acts the official undertook 'are of a type that fell within the employee's job responsibilities.'") (quoting Holloman, 370 F.3d at 1265).  In addition, the Court already has concluded that Plaintiff states a claim for violation of its equal protection rights and its right to procedural due process.  The sole issue with respect to qualified immunity is whether Plaintiff has satisfied its burden of demonstrating that the State Defendants' alleged conduct violated a clearly established constitutional right.

"For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Magluta v. Samples, 375 F.3d 1269, 1283 (11th Cir. 2004) (citing Hope v. Pelzer, 536 U.S. 730, 739 (2002)).  "The very action in question does not have to have been found unlawful, but in light of pre-existing law the unlawfulness must be apparent." Magluta, 375 F.3d at 1283 (citing Hope, 536 U.S. at 739).  "The salient question is whether the state of the law at the time of the violation gave the officials fair warning that their alleged actions were unconstitutional." Magluta, 375 F.3d at 1283 (citing Hope, 536 U.S. at 741).

To sustain its burden of demonstrating that the State Defendants' alleged conduct violated a clearly established constitutional right, Plaintiff cites the Court to four Eleventh Circuit cases.  (Pl.'s Resp. to State Defs.' Mot. to Dismiss at 20.) Two of these cases -- Olech and Executive 100 -- concern violations of equal protection rights, and the Court concludes that these cases were sufficient to put a reasonable state official on notice that the conduct alleged here was clearly unlawful.  See Olech, 528 U.S. at 564-65; Executive 100, 922 F.2d at 1541.[12] Accordingly, the State Defendants are not entitled to qualified immunity with respect to Plaintiff's equal protection claim.

With respect to its procedural due process claim, Plaintiff has failed to carry its burden to demonstrate that the State Defendants' alleged conduct violated a clearly established constitutional right.  The two cases cited by Plaintiff in support of its arguments concerning procedural due process -- Espanola Way Corp. v. Meyerson, 690 F.2d 827 (11th Cir. 1982), and Swint v. City of Wadley, 51 F.3d

---

[12]  Indeed, the State Defendants in their reply brief do not challenge that Plaintiff's right to equal protection was clearly established at the time of the alleged conduct and that these cases were sufficient to put the State Defendants on notice that the alleged conduct here was unlawful.  (See State Defs.' Reply in Supp. of Mot. to Dismiss at 11-13.)

988 (11th Cir. 1995) -- are not sufficiently similar to this case to provide the State Defendants with notice that their alleged conduct was unlawful.

In Espanola, hotel owners brought civil rights claims against the city commissioners, alleging that the commissioners formed a task force of building code inspectors and fire inspectors to conduct frequent inspections of their hotels and to write numerous and burdensome violations of the hotels until they were driven out of business.  690 F.2d at 828.  The district court granted summary judgment for the defendants on the basis of qualified immunity.  Id.  The Eleventh Circuit reversed, holding that qualified immunity was inappropriate for a host of reasons, including that the defendants pleaded only absolute immunity, not qualified immunity, and that the defendants failed to establish they were performing a discretionary function at the time of the alleged violation.  Id. at 830. The court also stated, without citation, that "a conscious attempt to deprive property owners of property without due process of law clearly contravenes established law."  Id. Aside from the general statement that the right to due process is clearly established -- a statement on which it did not substantially rely in reaching its conclusion and on which it did not elaborate -- the court in Espanola did not address what protections, if any, were necessary to satisfy due process in these circumstances.

-36-

In <u>Swint</u>, proprietors and patrons of a nightclub alleged that law enforcement officials violated their due process rights by deliberately attempting to drive the club out of business through pretextual law enforcement raids.  51 F.3d at 1001.  The district court denied the defendants' motions for summary judgment, finding that qualified immunity was not warranted.  <u>Id.</u> at 1000-01.  The Eleventh Circuit reversed, holding that it was not clearly established in this circuit at the time of the defendants' conduct that attempts by law enforcement to force citizens out of business through the use of repeated and improperly motivated raids of their business establishments violated the Due Process Clause.  <u>Id.</u> at 1001.  Thus, the court in <u>Swint</u> did not purport to establish that a business's protection against repeated and unlawful law enforcement raids is clearly established; rather, the court found that qualified immunity was appropriate because the due process right at issue was not clearly established prior to the defendants' conduct.

Thus, although <u>Espanola</u> and <u>Swint</u> involve the broad notion of "due process," neither of them addresses the issue at the crux of the procedural due process claim here -- whether, under <u>Matthews v. Eldridge</u> and its progeny, a pre-deprivation hearing is required before the government may suspend a business's operating permit.  In view of the uncertainty regarding whether a pre-deprivation

hearing is required under the balancing test set out in <u>Matthews v. Eldridge</u>, and the lack of controlling case law addressing this issue in the context of a suspension of a business's operating permit or substantially similar fact pattern, the Court finds that reasonable government officials in the State Defendants' position could have believed their actions to be lawful.  <u>See</u> <u>Powell</u>, 114 F.3d at 1082 (granting qualified immunity to state officials where the plaintiff failed to demonstrate "that it was clearly established at the time of the [officials'] actions in this case that an additional predeprivation procedure was feasible").  Accordingly, the State Defendants are entitled to qualified immunity with respect to Plaintiff's claim for damages against them in their individual capacities for their alleged violation of its right to procedural due process.

e.   *Abstention*

In addition to its claims for damages, Plaintiff seeks injunctive relief in the form of an order "enjoining Defendants from continued discrimination" (Compl. ¶ 112), and "preclud[ing] Defendants from continuing to violate Plaintiff's procedural due process rights." (<u>Id.</u> at ¶ 116.)  The State Defendants argue the Court should abstain from considering these claims for injunctive relief pursuant to the abstention doctrines set forth in <u>Younger v. Harris</u>, 401 U.S. 37 (1971), and <u>Burford v. Sun</u>

-38-

Oil Co., 319 U.S. 315 (1943).  (State Defs.' Br. in Supp. of Mot. to Dismiss at 17-

26.)  In essence, they argue that the Court should abstain under Younger and

Burford because the injunctive relief requested by Plaintiff, if granted, will interfere

with the ongoing administrative proceeding between Plaintiff and the EPD

concerning the Title V permit.  (Id. at 17-20, 21-26.)

    Plaintiff in its response represents to the Court that it "does not seek to

enjoin or challenge the final Title V Operating Permit issued by EPD . . . [and] does

not ask this Court to force EPD to grant [Plaintiff] a Title V Permit or to dictate the

terms of that Permit."  (Pl.'s Resp. to State Defs.' Mot. to Dismiss at 21.)  In view

of this representation, as well as the Court's rulings with respect to Plaintiff's

procedural due process claim,[13] the Court is not persuaded that its consideration of

Plaintiff's generalized claims for injunctive relief poses a substantial risk of

interference with the ongoing Title V permit proceedings.  Accordingly, the State

Defendants' request that the Court abstain from hearing Plaintiff's claims for

injunctive relief is DENIED.

    2.    The East Dublin Defendants' Motion to Dismiss

---

    [13]  The Court concluded that Plaintiff's procedural due process claim was
not viable with respect to the Title V permit proceedings.  See Section
II(B)(1)(c)(2), supra.

The East Dublin Defendants argue Plaintiff's claims against them should be dismissed pursuant to Rule 12(b)(6) because (1) much of the disputed conduct falls outside the two-year statute of limitations for Section 1983 claims; (2) Plaintiff's allegations with respect to conduct occurring within two years of the Complaint are not sufficient to state a claim for violation of its constitutional rights of equal protection or procedural due process; (3) even if these allegations are sufficient to state a claim for violation of a constitutional right, they are insufficient to state a claim against the East Dublin Defendants for conspiracy to violate these rights; and (4) Defendants Gornto and Knight are entitled to qualified immunity with respect to Plaintiff's claims for damages against them.  (East Dublin Defs.' Mem. of Law in Supp. of Mot. to Dismiss at 5-23; East Dublin Defs.' Reply in Supp. of Mot. to Dismiss [43] at 2-15.)  With respect to the East Dublin Defendants' first and second arguments for dismissal, the Court already has concluded that Plaintiff's claims are limited to conduct occurring on or after March 11, 2003, and that Plaintiff's allegations are sufficient to state a claim for violation of their constitutional rights of equal protection and procedural due process.  See Sections

II(B)(1)(b), (c), supra.[14]  Accordingly, the East Dublin Defendants' first and

second arguments are accepted in part and denied in part as set forth above with

respect to the State Defendants.  The Court in this section shall address only the

East Dublin Defendants' third and fourth arguments.

a.      *Conspiracy*

"To establish a prima facie case of section 1983 conspiracy, a plaintiff must

show, among other things, that the defendants 'reached an understanding to violate

[his] rights.'"  Rowe v. City of Ft. Lauderdale, Fl., 279 F.3d 1271, 1283 (11th Cir.

2002) (citation omitted); Bendiburg v. Dempsey, 909 F.2d 463, 469 (11th Cir.

1990) ("[N]othing more than an 'understanding' and 'willful participation' between

private and state defendants is necessary to show the kind of joint action that will

_____

[14]  The only difference in the East Dublin Defendants' first and second
arguments for dismissal and those presented by the State Defendants is the East
Dublin Defendants' contention that Plaintiff failed to adequately allege a deprivation
of a constitutionally protected property interest in connection with its procedural
due process claim.  (East Dublin Defs.' Mem. of Law in Supp. of Mot. to Dismiss
at 6-7.)  The Eleventh Circuit has instructed that "no procedural due process claim
exists until a sufficiently certain property right under state law is first shown."
Greenbriar Village, L.L.C. v. Mountain Brook, City, 345 F.3d 1258, 1265 (11th Cir.
2003).  Here, Plaintiff alleges a protectable interest in its continued operation of the
Dublin Facility pursuant to the previously granted LAS permit.  (Compl. ¶¶ 86, 89-
91.)  The Court finds that, at this stage of the litigation, these allegations are enough
to show a sufficiently certain property right under state law.

subject private parties to § 1983 liability.").  Although vague and conclusory allegations suggesting a Section 1983 conspiracy are insufficient to withstand a motion to dismiss, <u>Harvey v. Harvey</u>, 949 F.2d 1127, 1133 (11th Cir. 1992), the plaintiff is not required "to produce a 'smoking gun' to establish the 'understanding' or 'willful participation' required to show a conspiracy . . . ." <u>Rowe</u>, 279 F.3d at 1283-84 (citation omitted).  It is sufficient if he shows "some evidence of agreement between the defendants."  <u>Rowe</u>, 279 F.3d at 1283-84. <u>Cf.</u> <u>Harvey</u>, 949 F.2d at 1133 ("For purposes of 42 U.S.C. § 1983, the plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the state actor(s) and the private persons."); <u>GJR Invs., Inc. v. County of Escambia</u>, 132 F.3d 1359, 1370 (11th Cir. 1998) (holding that a plaintiff claiming a conspiracy under Section 1983 must make particularized allegations that a conspiracy exists).

In this case, Plaintiff asserts that the East Dublin Defendants conspired with the State Defendants and Laurens County to violate its constitutional rights of equal protection and procedural due process.  To survive a motion to dismiss for failure to state a claim, Plaintiff must allege facts sufficient to demonstrate these defendants reached an understanding to violate its constitutional rights and must

plead in detail, through reference to material facts, the nature of the alleged

conspiracy between them.  See Rowe, 279 F.3d at 1283; GJR Invs., 132 F.3d at

1370.  Having reviewed the allegations in the Complaint, the Court finds Plaintiff

alleges sufficient facts to support its claim that the defendants reached an

understanding to violate its rights to equal protection and procedural due process.

Plaintiff alleges with the required specificity that (1) beginning in the 1990s, the East

Dublin Defendants committed to singling out the Dublin Facility to be shut down;

(2) that from 2002 forward, they were in close communication with the State

Defendants regarding various strategies for accomplishing this result; and (3) that

the East Dublin Defendants and the State Defendants agreed to undertake certain

actions in furtherance of their mutual goal, including by providing the EPD or

federal government agencies with allegedly false or exaggerated information

concerning environmental conditions at the Dublin Facility, suspending Plaintiff's

LAS permit for the facility, threatening revocation of and attaching certain

conditions to the Title V permit, etc. (See Compl. ¶¶ 36-102.)  These allegations,

which must be taken as true for purposes of the East Dublin Defendants' motion to

dismiss, are sufficient to state a Section 1983 claim for conspiracy to violate

Plaintiff's constitutional rights.  Accordingly, the East Dublin Defendants' motion to dismiss to Plaintiff's Section 1983 conspiracy claim is DENIED.[15]

> b.   *Qualified Immunity*

The East Dublin Defendants argue that Defendants Gornto and Knight are entitled to qualified immunity with respect to Plaintiff's claims for damages against them in their individual capacities.  (East Dublin Defs.' Mem. of Law in Supp. of Mot. to Dismiss at 17-20.)[16]  Plaintiff opposes qualified immunity for Defendants

---

[15]  Ultimately, of course, the evidence may show that the East Dublin Defendants' conduct with respect to the Dublin Facility and their interaction with the State Defendants reflected only a legitimate and well-founded concern for the public health and the environment rather than an understanding to violate Plaintiff's constitutional rights.  Because Plaintiff has adequately alleged a Section 1983 conspiracy, however, this issue is not appropriate for resolution on a Rule 12(b)(6) motion.  See Bendiburg, 909 F.2d at 469 (denying summary judgment on Section 1983 claim against private parties because issues of fact existed regarding the conduct and motivation of the private parties in providing allegedly false information to the government in furtherance of an alleged conspiracy to violate the plaintiff's constitutional rights:  "The facts as they develop may well show that all of the [private parties'] representations as to required medical care were accurate, or reasonably thought to be accurate, and the private parties left it to the state actors to legally obtain the consent that they sought.  This cannot be decided on summary judgment, however, as there are issues of fact concerning the emergency requirement of the recommended medical procedure.").

[16]  Although Defendant Knight appears to be an attorney in private practice in Dublin, Georgia, Plaintiff alleges that at all times relevant to this action he acted under color of state law as special counsel to Defendants City of East Dublin and Laurens County and that his alleged conduct herein was undertaken in furtherance

Gornto and Knight on the same grounds that it opposed qualified immunity for the

State Defendants, namely, that (1) the East Dublin Defendants did not demonstrate

that Defendants Gornto and Knight were performing  discretionary functions at the

time of the alleged violations of Plaintiff's constitutional rights; and (2) that their

alleged conduct violated a clearly established constitutional right.  (Pl.'s Resp. to

East Dublin Defs.' Mot. to Dismiss at 24-25.)  To support its argument that

Defendants Gornto and Knight's alleged conduct violated clearly established

constitutional rights, Plaintiff again relies on Olech and Executive 100 with respect

to its equal protection claim, and Espanola and Swint with respect to its procedural

due process claim.  (Id. at 25.)  For the reasons stated above regarding the State

Defendants, the Court concludes that Defendants Gornto and Knight are entitled to

qualified immunity with respect to Plaintiff's procedural due process claims.  See

_____

of this engagement.  (See Compl. ¶ 10.)  As such, Plaintiff does not dispute that he
is entitled to assert the defense of qualified immunity.  (Pl.'s Resp. to East Dublin
Defs.' Mot. to Dismiss [30] at 24-25.)  See generally Burrell v. Bd. of Trs. of Ga.
Military Coll., 970 F.2d 785, 795-96 (11th Cir. 1992) (citing with approval cases
from other circuits holding that "the qualified immunity doctrine protects a private
defendant who acted in accordance with the duties imposed by a government
contract, performed a governmental function, and is sued solely on the basis of
acts performed pursuant to the contract") (citation omitted).

Section II(B)(1)(d), <u>supra</u>. Qualified immunity for these defendants is denied,

however, with respect to Plaintiff's equal protection claim.  <u>See</u> <u>id.</u>

### C.   Defendant Laurens County's Motion for Judgment on the Pleadings

"Judgment on the pleadings under Rule 12(c) is appropriate when there are

no material facts in dispute, and judgment may be rendered by considering the

substance of the pleadings and any judicially noticed facts."  <u>Horsley v. Rivera</u>, 292

F.3d 695, 700 (11th Cir. 2002) (citing <u>Hawthorne v. Mac Adjustment, Inc.</u>, 140

F.3d 1367, 1370 (11th Cir. 1998)).  "If upon reviewing the pleadings it is clear that

the plaintiff would not be entitled to relief under any set of facts that could be

proved consistent with the allegations, the court should dismiss the complaint."

<u>Horsley</u>, 292 F.3d at 700 (citing <u>White v. Lemacks</u>, 183 F.3d 1253, 1255 (11th Cir.

1999)).

Defendant Laurens County moves for judgment on the pleadings on

Plaintiff's claims against it on the grounds that (1) claims based on alleged conduct

occurring prior to March 11, 2003, are barred by the statute of limitations; and (2)

that Plaintiff's claims with respect to post-March 11, 2003 conduct fail because

Defendant Laurens County's alleged conduct was not the legal cause of Plaintiff's

damages under Section 1983.  (Def. Laurens County's Br. in Supp. of Mot. for J.

on Pleadings at 7-12.)  The Court already has determined that Plaintiff's claims

based on pre-March 11, 2003 conduct are barred by the statute of limitations, <u>see</u>

Section II(B)(1)(b), <u>supra</u>, and Defendant Laurens County's motion for judgment

on the pleadings with respect to these claims is GRANTED.  The sole remaining

issue is whether Plaintiff's claims based on post-March 11, 2003 conduct fails as a

matter of law because Defendant Laurens County's alleged conduct was not the

legal cause of its injuries.

     Defendant Laurens County bases its legal causation argument on <u>Dixon v.</u>

<u>Burke County, Ga.</u>, 303 F.3d 1271 (11th Cir. 2002).  In <u>Dixon</u>, an unsuccessful

candidate for a county board of education vacancy brought a Section 1983 equal

protection claim against the county, the district attorney, and the foreman of the

grand jury that had been charged with providing recommendations for filling the

vacancy.  303 F.3d at 1273-74.[17]  The plaintiff alleged she was denied the position

because of her gender, citing comments by the district attorney to the grand jury

that they should select someone of the same race and gender as the previous board

---

[17]  Pursuant to the county's procedure for filling board vacancies, the grand jury's recommendation was subsequently approved by a state-court judge.

-47-

member, a white male.  Id.  The district court granted summary judgment for the district attorney, holding that the plaintiff could not show the requisite causation because the vote of nineteen "independent" grand jurors severed the chain of liability between the district attorney's comments and the ultimate decision not to select the plaintiff for the vacancy.  Id.  The Eleventh Circuit affirmed, holding that a "causal relation does not exist when the continuum between Defendant's action and the ultimate harm is occupied by the conduct of deliberative and autonomous decision-makers."  Id. at 1275.  The court held that in this particular case "[t]he causal connection between [the district attorney's] words and [the alleged discriminatory action] is severed by the intervening free, independent, and volitional acts of the Grand Jury and the state Judge."  Id.

Dixon and its reasoning do not apply here.  Unlike Dixon, this case is before the Court on a motion for judgment on the pleadings, not a motion for summary judgment.  The standards for resolving these two types of motions differ significantly.  Compare Horsley, 292 F.3d at 700, with Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  The differences in these standards are material here, because the success of Defendant Laurens County's legal causation argument turns on factual issues such as the independence and

autonomous nature of the decisionmaking process employed by the State

Defendants in imposing the alleged unconstitutional deprivations.  At this stage of

the litigation, the Court cannot assume the State Defendants engaged in free,

independent decisionmaking regarding the alleged deprivations, thus severing the

causal connection between Defendant Laurens County's conduct and the alleged

unconstitutional conduct.  Instead, the Court must accept as true the specific

factual allegations set out in the Complaint, which in this case aver that Defendant

Laurens County reached an understanding with the State Defendants to violate

Plaintiff's constitutional rights of equal protection and procedural due process.[18]

Accordingly, Defendant Laurens County's motion for judgment on the pleadings

on these claims is DENIED.

---

[18] As stated above, a plaintiff seeking to recover against a defendant on a
theory of Section 1983 conspiracy must show, among other things, that "the
defendants 'reached an understanding to violate [his] rights.'"  Rowe, 279 F.3d at
1283 (citation omitted); Bendiburg, 909 F.2d at 469 ("[N]othing more than an
'understanding' and 'willful participation' between private and state defendants is
necessary to show the kind of joint action that will subject private parties to § 1983
liability.").  Here, Plaintiff alleges that Defendant Knight, acting on behalf of
Defendants City of East Dublin and Laurens County, conspired with the State
Defendants to violate Plaintiff's constitutional rights of equal protection and
procedural due process.  As stated above with respect to the East Dublin
Defendants, the Court finds Plaintiff alleges a Section 1983 conspiracy among these
defendants with sufficient factual specificity to survive a Rule 12 motion.  See
Section II(B)(2)(a), supra.

III.    **CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the East Dublin Defendants' Motion to Transfer [7] and the State Defendants' Motion to Transfer [48] are **DENIED**.

**IT IS FURTHER ORDERED** that the State Defendants' Motion to Dismiss [24], the East Dublin Defendants' Motion to Dismiss [8] and Defendant Laurens County's Motion for Judgment on the Pleadings [10] are **GRANTED IN PART** and **DENIED IN PART** as set out above in Sections II(B)(1), (2) and II(C), respectively.

**SO ORDERED**, this 23rd day of March, 2006.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE